## GENERAL COURT, MAY TERM, 1802.

### Darnall's Lessee, *vs.* Goodwin.

*The deposition of a witness taken upon a survey of the land made under a warrant issued in a former ejectment, between persons under whom the present parties claim, not permitted to be read in evidence in a new ejectment, altho' the witness was a non-resident of the state, and upwards of 80 years of age, due diligence not having been used to procure the attendance of the witness.*

*Under what circumstances such a deposition may be read in evidence.*

*The jury are not estopped or concluded by the locations made by either party on the plots, so that the part for which they give their verdict is included within the plaintiff's claim.*

EJECTMENT for a tract of land called *The Land of Promise*, lying in Baltimore county. Defence on warrant, and plots returned.

The defendant, to prove the issue on his part, and to establish his location of a tract of land called *Affinity*, for which he took defence, and to disprove the location of the same tract as made by the plaintiff, offered to read in evidence the depositions of *Thomas Nicholls*, senior, duly taken on a survey made under the authority of this court in a suit then depending in it between *Henry Bennett Darnall's* lessee, plaintiff, (under whom the present plaintiff claims,) and the present defendant, for the same land for which this suit is brought, and proved that the said *Nicholls* had moved from this state between two or three years past to *Kentucky* or *Tennessee*, being then eighty years of age, and, if living, was living in one of those states, and had resided there from his first removal out of this state.

The plaintiff then also offered evidence to prove, that a letter from the grandson of the said *Nicholls* was received within the last year, stating that the said *Nicholls* was then alive, and able to walk ten

miles of a day to meeting; and further proved, that the place where the said *Nicholls* removed to, and where he resides, was well known in the neighbourhood where the lands in dispute in this cause lay. And no evidence being produced on the part of the defendant to prove *Nicholls* dead, and no commission or other process having issued to obtain his testimony, or other means used to obtain it, the plaintiff's counsel objected to the said depositions being read to the jury.

*Hall, Key, Hollingsworth* and *Scott,* for the plaintiff.

*Martin,* (Attorney General,) and *Mason,* for the defendant, who cited *Esp.* 755. *Bull. N. P.* 236. *Doug.* 90, 93, 205, 216. 7 *T. R.* 261. 5 *T. R.* 371.

CHASE, Ch. J.(*a*). The court are of opinion that the depositions of *Thomas Nicholls* ought not to be read in evidence to the jury.

The general principle is, that where the witness is dead, his deposition may be read; or where due diligence has been used, and he cannot be found, there the court have permitted the reading of his deposition. The act of assembly authorises the sending of a commission to take the deposition of witnesses who reside out of the state; and the defendant might have obtained one for that purpose, and if the commissioners had certified that the witness could not be found, there would then perhaps have been a reasonable ground for admitting the depositions in evidence.

The mode of perpetuating testimony in *England* is by filing a bill in chancery and taking out a commission. The court know of no instance where such commission ever went from the courts of common law in that country.

The chief judge said, he recollected a case in the general court for the eastern shore where it was stated that the witness lived in *Kentucky,* and no commission had been taken out to obtain his testimony, and the court refused to let his deposition be read in evidence. The defendant excepted.

(*a*) *Duvall* and *Done,* J. concurring.

May 1802.

Darnall
vs.
Goodwin

The jury are not estopped or concluded by the locations made on the plots by either party, so that the part for which they give their verdict, if for the plaintiff, is included within his claim.

*Verdict* and *Judgment* for the plaintiff, "according to the following location on the plots, from black A to black N, at the Glade, from thence to black G by the falls of Gunpowder, from thence to black figures 26, from thence to black H, from thence with the black lines shaded yellow to the figures 15, 16, 17, 18, 19, 20 to 21 to 25, thence with the black lines shaded blue to black letter C, and from thence to the beginning at A."

The defendant appealed to the Court of Appeals.

*Martin,* (Attorney General,) for the Appellant, contended. that the depositions of *Nicholls* ought to have been admitted in evidence. They were taken in course of *judicial proceedings,* under *legal authority,* in due manner, the *parties having full opportunity to cross examine.* Had *Nicholls* been dead it is clear that the depositions would have been good evidence for two reasons—

1. Because verdicts, judgments, testimony of witnesses who are dead, and any other legal proceedings, are always admissible in every case and for every purpose between the parties to such proceedings, and privies.

2. Because these depositions relating to and being meant to establish boundaries, in which case hearsay and common reputation is admissible, would be evidence even against strangers.

It may be said that the defendant might have examined *Nicholls* on the survey in this suit, as he did not leave here until two or three years after the suit was commenced. But it may be answered, 1st. *Nicholls* went away before the survey was closed, and without the defendant's knowing that he intended to go away. No particular neglect can therefore be charged on the defendant for not having examined him among the first witnesses. 2d. He had been examined in the former suit, his testimony was on the records and known, and unless either party thought he could disclose something material in addition, there was no motive to examine him again; for there can be

no doubt but that his depositions in the first suit were admissible as evidence in any case where his deposition in this suit could have been admitted. It becomes then a question, as it was, from his great age when he left here, uncertain whether he was alive, and since if alive he was out of the jurisdiction of the court, his depositions ought not to have been admitted as if his death had been proved. It is contended that they ought, and upon the following authorities: *Holmes vs. Pontin, Peake's N. P.* 99. *Coghlan vs Williamson, Doug.* 93. *Barnes vs. Trompowskey,* 7 *T. R.* 261. *Peake's Law of Evid.* 66. 1 *Bos. and Pull.* 360. But it will be said, that as by a law of this state a commission might have been sent to examine *Nicholls* where he resided, his depositions ought not to be received. This may be answered—1st. A law authorising testimony, taken in a certain manner, to be admitted in evidence, doth not take away the right of using any other testimony which was admissible before. 2d. There could be no reason why either party should send a commission to a foreign government to examine a witness, in the absence of the parties, when the same witness had been duly examined upon the same subject, under the authority of our courts, and in the presence of the parties interested, or what is the same, of those then interested, and under whom the present parties claim. 3d. Our act of assembly doth not materially vary the case from those decided in Great Britain, since there commissions might have been issued to examine witnesses, as fully appears both from the argument of counsel, and the decision of Lord *Kenyon* in 7 *T. R.* 261. But such commissions are attended with expense, *with great delay,* and what is still worse, the witness is not *obliged to attend and be examined, nor can be compelled to do so.* The authorities cited establish this principle, that where a witness is in a foreign country, or a different kingdom or state, he is to be considered as dead, for the purpose of letting in such evidence as would be admissible if he was dead. Where the witness to an instrument of

writing is out of the British government, their courts permit the *proof of his hand writing.* Surely then if such witness was judicially examined in a due and regular course of proceedings between the same parties, or those under whom they claim, his deposition would be received; since declarations on oath of a witness, *that he signed the instrument, are stronger testimony than the mere similarity of hand writing.* Depositions thus taken upon surveys and returned, are taken for the very purpose of being used, if the deponent cannot be had at the trial—death, sickness, absence from the state, may unavoidably prevent him from attending. The only case where a commission can be necessary to obtain the testimony of a person beyond sea, or out of the state, is where you *have not in any other manner obtained his testimony,* or *where the want of his personal examination cannot be supplied by other means,* as by *proving the hand writing.* Upon these authorities and observations it is submitted to the court that the depositions rejected ought to have been received.

There is another matter which appears upon the record to which the attention of this court is called. The plaintiff has laid down his claim and pretensions beginning at E on the plot, running per table of courses No. 3 shaded blue. The defendant took defence for *Affinity* beginning at L, as per table of courses No. 14 with yellow shaded lines. The jury have by *their verdict* given the lands a different location from either plaintiff or defendant. They found a location from A to N, and from N to G, at the Falls. The plaintiff claimed from A to N, and then to E. The defendant contended for the location from A to 27, then to G.

I have never doubted but what the jury may find a verdict by different lines from the locations made by either plaintiff or defendant, and that the jury are not estopped or concluded by the locations made by either party, so only that the part for which they give their verdict *is included within the plaintiff's claim,* as they have a right to give a verdict for any part to which

he may be enti
right to describ
verdict, by drawr
different from line
mode of description
provided there is a
which they can draw
ascertain the part by
sidered the law and the
jury directed so to do, pr
tiff ought to recover some
different locations, and furn
bar, with instruments for the
trary doctrine has been held la
thought it a duty to my client to
the consideration of the court.

*Key*, for the Appellee, as to the *first qu*
there was a subscribing witness to a deed
was proved to be dead, it was necessary that he
appear. This was the ancient law. But the judge
finally relaxing the strictness of the ancient law de-
cided, that where the witness was out of the process
of the court the party might prove the hand writing,
the same as if the witness was dead. So when the
witness is beyond sea, the hand writing may be prov-
ed. But in order to lay a foundation for such evi-
dence, the party must show that due diligence has been
used; and if the witness has been once in his power,
and he has neglected to take his deposition, this rule
of evidence will not be extended to him. The case in
*Doug.* 93, is the first instance of a departure from the
ancient rigour of the common law on this subject.
That case was debt upon a bond. The subscribing
witness had left the country five years before the suit
was brought. Due diligence had been used to get the
witness. Evidence of the defendant's hand writing
was admitted. In *Peake's N. P.* 100, due diligence
had been used to procure the witness. In *Peake's
Evid.* 66, a foundation must be laid to admit proof of
the hand writing of witnesses to a deed; and in 7 *T.*

to a deed, and
oved where the
eign parts. This
ich has never been
aving been used to
ss. Our courts are
ions; but it is discre-
gland, so that a com-
otained as a matter of
s at an end entirely upon
of the former lessor of the
stance in this state of the de-
out of the reach of the pro-
ing been given in evidence. The
for admitting the testimony was
not remove before 1799. In 1797
was brought, two years antecedent to
of *Nicholls* out of the state, and the trial
in 1802; due diligence therefore was not used
et his testimony, and the general court was right
in rejecting it. Besides, a deposition taken in a for-
mer action which has *abated*, without having given any
notice to the party, and the witness residing within
the reach of the process of the court at the time of
making the survey, when the witness might have been
produced, ought not to be read in evidence.

*Second question.* The jury have in this case by
their verdict found a different location than that laid
down by the plaintiff in his pretensions. They gave
less land than the plaintiff claimed, but within the
plaintiff's pretensions. The *right of the jury* to draw
lines on the plot has never been disputed till lately.
The jury are competent to draw lines from point to
point, provided they find for the plaintiff no more
land than he claims by his pretensions, and keep with-
in his pretensions. The jury are sworn to try the
fact, and the location is the fact which they are to try.
From the year 1730, till after the revolution, there
were no calls allowed in surveys except for a begin-
ning.

The variation of the needle was left discretionary with the jury, and they have always allowed for the variation of the needle. But the jury very often find different variations, and they may find one which neither the plaintiff nor the defendant has laid down on the plots. Should it however be considered that a variation located must be found by the jury, and the jury should think none of the locations right, there would be no verdict found. Where the jury draw the line, there are two ascertained points to draw the line from and to. The line is drawn from point to point.

THE COURT OF APPEALS, at November term, 1804, *affirmed* the judgment of the General Court. Upon the question stated in the *bill of exceptions* that due diligence had not been used to procure the testimony upon the second trial, one of the judges, *(Dennis,)* had great doubts whether, as the defendant in the court below had obtained the testimony in the first action, he was not excused from endeavouring to procure it at the trial had in this suit, when he considered himself as possessing it under the survey in the former suit.