No. 24.—THOMAS H. SMITH, plaintiff in error, *vs.* PHILIP GETTINGER and MICHAEL BARSCHALL, defendants in error.

[1.] A judgment in attachment may be set aside in a court of law, upon an issue suggesting fraud or want of consideration, tendered by a judgment creditor of the defendant in attachment.

Motion to set aside judgment in attachment, by a junior attachment creditor, and issue tendered suggesting want of consideration

or cause of action, to support the prior attachment judgment. In Muscogee Superior Court. Before Judge Alexander. May Term, 1847.

For the facts of the case, and the issue tendered in the Court below, see the opinion delivered by the Supreme Court.

JOHNSON & WILLIAMS for the plaintiff in error.

SCHLEY for the defendants in error.

*By the Court.*—NISBET, J. delivering the opinion.

Upon a rule against the sheriff for the distribution of money raised by attachment, the plaintiff in error, holding an attachment lien junior to that of the defendants, sought to set aside their lien. The attachment claim of both parties had been reduced to judgment. For the purpose of vacating the judgment of the defendants and thereby defeating their older lien, the plaintiff in error tendered to them in the Court below the following issues :

1. That said Gettinger & Barschall, (the defendants in error,) have no judgment against Benjamin Hurd, (the defendant in attachment,) good and sufficient in law ; nor did said Gettinger & Barschall have at the time of suing out their attachment, any cause of action against said Hurd, as alleged.

2. That said judgment in favour of said Gettinger & Barschall had upon said attachment, is, and was, without adequate consideration, and therefore void as to the said Smith, (the plaintiff in error.)

3. That the attachment in favour of Gettinger & Barschall was sued out on a note made by one Marston and not by the defendant Hurd, and that said judgment on said attachment was had and founded on said note made by said Marston, and that no other evidence besides said note, was produced to the jury who found said verdict in favour of said Gettinger & Barschall; and that therefore said judgment and attachment is of none effect as against said Smith.

The defendants in error demurred to these issues, and the [1.] Court sustained the demurrer; to which decision the plaintiff in error excepts, and upon it assigns error. The questions made by the record appear to be these, to wit : *is it competent for a plaintiff in attachment, holding a judgment and an attachment lien younger*

Smith *vs.* Gettinger and another.

*than the judgment and attachment lien of another plaintiff in attach-*
*ment, against the same defendant, to set aside the older lien and*
*judgment, upon the ground of want of consideration for that judgment,*
*or upon the ground of fraud in the judgment; and if it is, can it be*
*done by motion, and issue tendered at law?*

It does not appear from the record, upon what ground the Court
below sustained the demurrer to the plaintiff's issues; whether
Judge Alexander denied the competency of the plaintiff in error
to attack the judgment of the defendants at all, or whether he held
it irregular to attack it in this way; we only know that he refused
to order a trial of the issues.   The note on which the attachment
of the defendants is founded, is due on the 7th February, 1846,
the same day on which their attachment was levied, and is signed,
" B. Hurd, by J. H. Marston."   The issues tendered deny this to
be the note of Hurd; and whether it was or not, and whether there
was or not fraudulent collusion between Gettinger & Barschall and
Hurd, or his agent Marston, to give them an attachment lien in
defeat of the rights of the plaintiff in error, as creditor of Hurd, are
the questions sought to be tried.   Our analysis of the whole pro-
ceeding, therefore, resolves it into the questions put by us; can the
judgment of Gettinger & Barschall be set aside, and in this way, in
favour of a younger lien and judgment by attachment, for fraud?

The general rule as to the effect of judgments is, that they are
conclusive upon parties and privies.   Parties are all such persons
as were directly interested in the subject matter, had a right to
make defence, to adduce testimony, to cross-examine witnesses, to
control the proceedings and to appeal from the judgment.   Privies
are all persons who are represented by the parties and claim under
them, all who are in privity with the parties; the term privity
denoting mutual or successive relationship to the same rights of
property.

This rule is founded upon the expediency and necessity that a
limit should be prescribed to litigation, and that the same cause of
action ought not to be brought twice to a final determination.
" Justice requires, (says Mr. Greenleaf,) that every cause be once
fairly and impartially tried; but the public tranquility demands,
that having been once so tried, all litigation of that question and
between those parties, should be closed forever."   Persons occu-
pying the relation of privies are concluded by the judgment, on
the ground that they are identified in interest with the party.   All
privies, whether in estate, in blood, or in law, are on this principle

estopped from litigating that which is conclusive upon him with whom they are in privity. All persons not parties or privies are regarded as strangers. *Duchess of Kingston's Case,* 20 *Howell St. Tr.* 538 *n. ;* 9 *Dowl.* 228 ; *Carver* vs. *Jackson,* 4 *Peters* 85, 86 ; 14 *Johns.* 81 ; 2 *Doug.* 517 ; *Greenleaf Ev. secs.* 19, 20, 189, 522, 523 ; 1 *Kelly* 410.

Strangers are not concluded by a judgment. *Brown* vs. *Chaney,* 1 *Kelly* 412, *and the authorities there cited.* Nor are persons liable as sureties, conclusively bound by a judgment against their principals. *Bryant Guardian &c. and Beall Ex'r. of Pye* vs. *Owen & Wife,* 1 *Kelly* 369, 379 ; 1 *Kelly* 84; *Ib.* 410, *and the authorities in these cases cited.*

Without going further into the general doctrines upon this subject, we proceed to say, that the plaintiff in error was not a party, nor a privy, to the judgment or attachment rendered in favour of Gettinger & Barschall *vs.* Hurd. He had no power, in his own right, to make a defence against it, to adduce testimony, to examine witnesses, to control the proceedings, or to enter an appeal. The proceedings in attachment after it is returned executed, if the property is not replevied, are by statute, in Georgia, the same as in case of original process against the body, where there is default of appearance. *Hotchkiss* 552. The plaintiff's declaration may be filed at the first term, and the defendant is entitled to replevy, or plead to the declaration whether he replevies or not. *Hotchkiss* 553, 554. In these provisions we find no grant of authority to strangers to come in and plead, or in any way to be heard in their own right.

By the act of December, 1816, when an attachment issues against an absent person, any person is authorized to act as a friend to the defendant, and give good special bail, and by himself or attorney plead and defend the suit. *Hotchkiss* 554. It might be argued that this statute gave to the plaintiff in error the right of being heard against the rendition of this judgment, and, failing to exercise it, he cannot be heard in avoidance of it. To which I reply : this act was designed to protect the defendant, and enures to his benefit alone. The pleading allowed is, such pleas as the defendant himself might set up in his own person. Before a stranger could be heard, the Court must be satisfied that he appears *as the friend* of the defendant, and that he defends with his approval. This might be inferred, and ordinarily is inferred, from the character of the defence made. But suppose a stranger should

demand under this statute to plead, in bar of the plaintiff's recovery, a fraudulent combination between him and the defendant, to cheat creditors; in such a case he does not appear as the friend of the defendant, but as his antagonist; in such a case the Court would be compelled, without pleadings, without an issue legally made, to determine what are the rights of the stranger in the subject matter of the suit, and to determine an issue sprung upon it informally, between the stranger and the *defendant.* Such irregularity could not be tolerated. But if, (which we deny), this statute gave to the plaintiff in error the right to be heard, it is not compulsory; he is not compelled to come in and plead, at the peril of a forfeiture of all other rights and of all other remedies against a fraudulent judgment. His remedies, upon that supposition, would be cumulative. Moreover, if it was his privilege to be heard against this judgment, it is not conclusive upon him *unless he had notice of the pendency of the suit;* and notice he had not—the record discloses no such fact. He was not served—was not cited to come in and plead. It is not important, however, to labour this position, as we are of opinion that the statute of 1816 does not relate to a party situated as was this plaintiff in error. As to the doctrine, however, touching the necessity of notice in cases where there is a liability over, sought to be enforced, *See Brown* vs. *Chaney,* 1 *Kelly* 412.

The plaintiff in error being a stranger then to this judgment, I presume it is scarcely necessary to adduce authorities to demonstrate his right to set it aside, if prejudicial to his interest, *for fraud.* Nor is it any the less questionable, that he may set it aside as being wholly *without consideration.* But there are some authorities which relate more particularly to attachments, which have a direct relevancy to this case. In Massachusetts, fraud will defeat an attachment, as against other creditors of the defendant. In *Pierce* vs. *Jackson,* 6 *Mass.* 244, Parsons, Chief Justice, holds the following language : " A suit is sometimes commenced when the plaintiff well knows that no cause of action has accrued to him; but his object is to obtain security by attachment, in preference to other creditors, who have causes of action. This attempt is against law, and a fraud on the other creditors, for whom some remedy ought to be provided. The debtor joining in the fraud, either to defend the suit, or by releasing errors, cannot defeat the creditor of his legal right to attach. *If therefore the plaintiff, when he caused the attachment to be made on his writ, had no cause of action,*

*he cannot claim the benefit of his attachment against a creditor having a good cause of action."*

So also when, with the assent of the debtor, a plaintiff attaches on a fictitious debt, his attachment will be set aside for fraud. *Adams* vs. *Paige,* 7 *Pick.* 542.

So also, when in one action an attachment is made, and judgment recovered on two demands, one of which is honest and the other fraudulent, or not due, the attachment is vacated for the whole. *Fairfield* vs. *Baldwin,* 12 *Pick. R.* 388 ; *Kendall* vs. *Lawrence,* 22 *Pick R.* 540.

So also, when there is an adjustment between the parties to a suit, and a judgment is entered by consent, including some demands for which there was no proper count in the writ, it was held, that the whole attachment was void as to other creditors. *Clark* vs. *Foxcraft,* 7 *Greenlf.* 248. *See also* 11 *Pick.* 352; 10 *Pick.* 9 ; 4 *Pick.* 143 ; 12 *Mass.* 495, 497 ; 16 *Mass.* 420, 422.

These principles and these authorities establish, that this attachment may be vacated, and also the judgment which is founded on it, *for fraud*—for any thing that amounts to a fraud upon the rights of other creditors, whether the defendant be a party to the fraud or not. It was sought to be done in this case, by an issue at law, before a jury. Can it be so done ? is the remaining inquiry. That it may be done by a proceeding in equity, by a creditor whose debt is not reduced to judgment even, I presume there is no doubt. It may be conceded, for it has been so ruled, particularly in South Carolina, that a creditor whose debt is not reduced to judgment, cannot, upon motion, set aside a judgment in attachment, for irregularity. In this case the debt of the objecting creditor is in judgment; he also has a lien upon the fund in the hands of the court for distribution. Nothing is more common in our courts, upon the distribution of money, than, upon the suggestion by one holding a junior lien that an older execution has been paid, to send that fact to be tried by a jury at law. Why may not a suggestion that there is fraud in the judgment, be tried in the same way ? It is not enough to say, that the party has a remedy in equity ; for over questions of fraud, the jurisdiction by express statute, and indeed by the general law, in courts of law and equity, is concurrent. *Prince,* 447. We think it is at the option of the party to move at law or go into equity. If he chooses to abide the rules of the law, the risk is his; the court has no right to turn him away. In South Carolina it has been determined that a

judgment will be set aside, at the instance of a creditor, upon an issue of fraud before a court of law. 1 *Hill S. C. R.* 262; *also in Downs* vs. *Fuller*, 2 *Met.* 135.

Let the judgment be reversed.