No. 22.—Hope H. Hammock, executor, plaintiff in error, vs. Wm. J. and John McBride, defendants.

[1.] On general principles, a judgment is binding and conclusive on parties and privies, until reversed or set aside by a legal proceeding; and it cannot be collaterally questioned by third persons, except on the ground of fraud and collusion, in the procurement of it. Creditors or bona fide purchasers may attack a judgment fraudulently obtained, whenever it interferes with their rights, either at Law or in Equity.

[2.] Depositions taken under the Statute, on account of the non-residence of the witness, cannot be read on the trial, provided the witness has notoriously resided within the County where the cause is pending for some time previously, and his attendance could be coerced by subpœna.

[3.] The words used by a witness are to be taken in their ordinary meaning, and when testifying to a fact necessarily within his knowledge, the evidence may go to the Jury, notwithstanding he fails to affirm positively that the thing is or is not so.

Assumpsit—Talbot Superior Court. Tried before Judge Alexander, September Term, 1848.

Wm. J. and John McBride commenced suit against Hope H. Hammock, as the executor, de son tort, of Caleb Adams, deceased, on a note made by said Adams, for the sum of $787 06, dated April, 1841, and due 25th December, 1841, payable to William Towns, or bearer. Plaintiff proved by Daniel Matthewson that, as Deputy Sheriff of Stewart County, on 1st Tuesday in February, 1844, he sold two negroes belonging to the estate of Caleb Adams—Noel, a boy, and Judy, a girl—and that said negroes were bid off by or for Elizabeth Adams, the widow of Caleb Adams. The executions under which they were sold, were in favor of Didema Adams vs. Caleb Adams, and had been assigned to Hope H. Hammock; said fi. fas. amounting to some $1600 or $1700, issued from a Justice's Court in Stewart County, and the levy was made and returned by a constable. Noel was sold for $765, and Judy for $677. No money was paid, but the amount was credited on the fi. fas. by defendant's direction.

Plaintiff then gave in evidence, the bill of sale made by the Sheriff. ·

Plaintiff then offered to read the interrogatories of Benjamin Powell and Didema Adams, to prove the said fi. fas. were frau-

Hammock *vs.* McBride and McBride.

dulent; to which, defendant below objected, which objection was overruled by the Court, and the testimony admitted.

By these witnesses, it was proven that the notes were given without consideration, and for the express purpose to defraud the creditors of Caleb Adams; that no consideration was given by Hammock to Didema Adams, for the transfer, except a promise to pay a note she held on Caleb Adams, for between $300 and $400; and that Hammock said his object in having the negroes sold, was to secure them for his sister, from the creditors of said Caleb Adams.

Plaintiff offered the interrogatories of John Childers, executed in Baldwin County, 11th March, 1847, Childers being then a convict in the Penitentiary, to which defendant below objected, on the ground, that since the taking of the said interrogatories, to-wit: in May, 1848, said witness had returned to the County of Talbot, and had resided, and still resides there, ever since. The Court overruled the objection, and ordered the interrogatories to be read.

Much other evidence was introduced. The defendant pleaded general issue, *ne unques* executor, usury and payment.

Defendant proved by William Towns, that the note sued on was given him in payment for the purchase of a certain tract of land.

The 6th interrogatory was: "Did you not renew said debt with said Adams? At the time of the renewal, was it not at 16 per cent.? And was, or not, said per cent. added into said note? If not at 16 per cent. at what per cent. was it? Was it not over the lawful rate of interest?"

Towns answered, "That he presumes the note was renewed at 16 per cent. per annum, but will not state positively; and that if renewed at all, it was added in the note."

Plaintiff's counsel objected to this answer, as too uncertain; which objection was sustained by the Court.

The Jury found a verdict for plaintiff. All of which decisions the defendant below excepted to, and alleges the same as error.

M. J. WELLBORN and B. HILL, for plaintiff in error.

WORRELL, for defendants, cited—

14 *Wend.* 62.    1 *Phil.* 290.    10 *Johns.* 530.    1 *Cow.* 81.    9 *Mass.* 227.    8 *Porter,* 343.    5 *Stewart & Porter,* 421.

*By the Court.*—LUMPKIN, J. delivering the opinion.

Wm. J. and John McBride brought their action of assumpsit in the Superior Court of Talbot County, to charge Hope H. Hammock, as executor in his own wrong, of Caleb Adams, deceased, with the payment of their debt.   Testimony was offered, to prove a fraudulent combination between the defendant, Didema Adams, the sister of the decedent, and others, to defeat the creditors of Caleb Adams ; and among other things, to show that sundry *fi. fas.* issuing from the Justice's Court, in favor of Didema Adams, against her brother, and under which two of the negroes of the estate were sold and bid in by Hammock, were fraudulent and void ; and that Hammock was a party to the collusion.   This evidence was objected to, on the ground that the Magistrate's Court executions could not be attacked in this collateral way ; but the objection was overruled and the proof admitted ; and this is the first error complained of in the bill of exceptions.

[1.] We concur fully in the judgment rendered upon this point in the Court below.   A fraudulent judgment may be set aside by creditors or purchasers for a valuable consideration, either at Law or in Equity.   Indeed, the Courts have gone the extent of deciding, that a fraudulent vendee gains no title to property by a judicial sale, or interest in it, notwithstanding an innocent creditor may, by that very sale, obtain a good title to the money.   That it is a good sale as to the creditor, to entitle him to receive the proceeds, and yet, no sale as to the fraudulent vendee, to enable him to shelter the property against pursuit.   *Strobel vs. Smith,* 8 *Watts,* 280.

And this is right.   The law abhors fraud, and all the avenues which lead to its detection and defeat, should not only be thrown wide open, but be kept free from the interposition of bars and estoppels of every kind.   A sale effected *by,* and affected *with* fraud, is no sale, and can produce no change whatever in the rights of innocent persons ; it is just the same as if no such attempt to alien had been made ; and it is the privilege and duty of any and every Court, so to declare ; for I repeat, that *fraud* is cognizable

Hammock *vs.* McBride and McBride.

in a Court of Law, as well as in Equity. A fraudulent vendee has no equity to be protected in a Court of Equity.

[2.] The plaintiffs in the Court below, to maintain the issue on their part, tendered in evidence the interrogatories of John Childers—the reading of which was resisted, on the ground that the witness, at the time of the trial, and for some months before, resided in the County where the cause was pending. The presiding Judge allowed the depositions to be read, holding, that if the witness resided out of the County, when the commission to take his examination issued and was executed, it was immaterial where he lived since, or at the time of the trial.

It is the opinion of this Court, that interrogatories cannot be used on the trial of a cause, where the witness has resided within the County a sufficient time previous to the trial, for his personal attendance to be coerced by process of subpœna, provided it is made satisfactorily to appear, that the party seeking their introduction, had timely notice, actual or constructive, of such residence.

It is true, that where any witness resides out of the State, or out of any County in which his testimony may be required in any cause, his testimony may be taken by interrogatories, and the examination read at the trial, on motion of either party. *Prince*, 425. But this is an exception to the general law upon the subject. That declares that where the attendance of any person shall be required, as a witness, in any cause depending in any of the Courts of this State, that it shall be the duty of the Clerk, on application, to issue writs of subpœna, directed to the person whose attendance shall be required, *where such persons reside within the County in which such cause may be depending, and shall be served on such witnesses, at least five days before the Court to which it shall be returnable.* And further, it is provided, that attachments shall issue against defaulting witnesses, and they are made liable to a fine not exceeding three hundred dollars, for their nonattendance; and also, to an action for damages, at the instance of the person at whose suit they were summoned. *Prince*, 424, '5.

Why, I would respectfully inquire, should not the Statute include a residence of four months, as well as four years? Or can it be gravely insisted, that because the witness was once in the category contemplated by the Act, that it should legitimate his

depositions forever afterwards? Why should not the general law apply to *such* a witness as well as to any other?

There is one view of this subject which would seem to be con-clusive. The Legislature, in 1806, authorized the testimony of witnesses going beyond seas or remaining without the jurisdic-tion of the State, and aged and infirm persons, to be taken by commission. The Act, however, declares, " That in case the per-son or persons, whose testimony shall have been so taken, *re-turn or be able to attend the Court, that then and in that case, such written testimony shall not be received or read.*" *Clayton's Comp. of Laws*, 323, 324. Would it not be unreasonable to hold, that the removal of the disability, to-wit: the non-residence of the witness, should exclude the testimony previously taken by com-mission in the one case, and not in the other?

I have examined the case of *Phœnix vs. Baldwin*, (14 *Wend.* 62,) read from the Digest in the course of the argument, and the *marginal* reading certainly sustains, to the fullest extent, the judgment of the Court below. The Supreme Court of New York there, seem to hold that a defendant, who has procured the testimony of a witness residing abroad, to be taken under a com-mission, is not bound on the trial of the cause, upon the requisi-tion of the adverse party, to call the witness, *who is then in Court*, and examine him *viva voce*, but may read his deposition as taken under the commission.

We cannot subscribe to this decision. Indeed, the Court, in its opinion, which is only five lines in length, do not advert at all to this point in the case, although it was fairly made in the record, and embodied in the head notes, by the Reporter. And what is still more singular, the case of *Fisher vs. Dale*, (17 *Johns. R.* 344,) is cited as authority in support of the principle, which is rather a precedent for the other side. There, the depositions of a witness residing abroad, were taken under commission, and read on the trial. There being no verdict, application was made to allow a second commission to issue ; to which the Court said they saw no solid objection. " The examination of witnesses in a Court of Chancery," continues the Court, " is private ; and the proceed-ings of that Court, in relation to the manner of taking testimony, is so different from that of Courts of Law, that the reasons on which the practice in Chancery is founded, do not apply here. Suppose a witness has not answered some of the interrogatories,

or has answered them in an obscure and unintelligible manner, it may be essential to the purposes of justice, to direct a second examination. *If the witness himself should come to this country before the trial, the Court could not refuse to permit his examination, although his depositions had been taken in the cause.*"

I would add, that the cases of *Doe ex dem. Sergeant vs. Adams,* (1 *Tyler,* 197,) and *Stiles vs. Bradford,* (4 *Rawle,* 374,) maintain directly, that a deposition cannot be read in evidence, when the deponent is in Court and capable of being examined. And many respectable authorities may be cited from other States, to show that where depositions are taken under a rule of Court, or Act of the Legislature, that they cannot be read, if the witness be within the jurisdiction of the Court, or reach of its process. *Tompkins vs. Wiley,* 6 *Rand.* 242. *Read vs. Bertrand,* 4 *Wash. C. C. R.* 558. *Rogers vs. Raborg,* 2 *Gill. & Johns.* 54. *Darnall vs. Goodwin,* 1 *Har. & J.* 282. *Ib.* 264.[*]

When it is recollected that depositions are admitted, only from the necessity of the case; that they are an unsatisfactory species of evidence not known to the Common Law, and in derogation of it; that it is but of a secondary character, and is therefore subject to the rule of law which forbids such evidence when better evidence exists, and is in the power of the parties; that the oral testimony of the witness, in the presence of the Court and Jury, is much better evidence than his deposition can be; we feel constrained to rule, that whenever it is in the power of the party, he is bound to resort to it, and that he will not be allowed to substitute a kind of proof inferior in its nature.

[3.] Among other defences to the action in the Circuit Court, the plea of usury was interposed, and the interrogatories of William Towns, the *payee* of the note on which the action was brought, were introduced, who swore, in a previous part of his examination, that the note had been renewed by him. When asked at what rate of interest the calculation was made, he answered, " *He presumed at* 16 *per cent. but would not state positively; and that if renewed at all, the interest was added in the note.*" This testimony was ruled out on the trial, for the reason that the witness did not speak with sufficient certainty. If the word *presume,* which was used by the witness, is to be construed etymo-

---

[*]Note.—See *Craft vs. Jackson, Adm'r,* 4 *Ga. R.* 360.—[Rep.]

logically, then the Court was right, for it means, according to the lexicons, to believe without examination; and in this sense, is a weaker term than *belief*, and even this is excluded, except in cases of *experts*, &c.; for *to believe*, is to put credit or confidence in the veracity of testimony; whereas, *to presume*, is to affirm a thing to be true, without proof.

Neither witnesses, however, nor the commissioners who take their testimony, are always *dictionary-makers*, and it will not do, therefore, to subject this testimony to so severe a test. Language must be construed in its ordinary import, and it will be found that persons usually employ the word *presume*, to admit or affirm, modestly or hesitatingly, a positive fact within their knowledge, and about which they are interrogated. Who ever answers yes to the question put to them, as to their candidature for office, their approaching nuptials or their participation in a usurious contract? The respondent, seeking a veil to conceal his confusion, falteringly *presumes* the thing is or may be so. Such, we have no doubt, was the meaning of this witness. The note was payable to himself, he had renewed it, and consequently knew positively whether it was or was not usurious. But unwilling to face the transaction without disguise, and to admit that he had broken the first law made for mankind, after the fall, which was, that in the sweat of *their own* face, they should eat their bread, *and not in the sweat of other people's;* and still more reluctant, perhaps, to testify to his own undoing, frankly to admit facts which would forfeit *all interest* on the original sum loaned; and yet, resolved not to testify falsely, the witness states that he " presumes the note was renewed at 16 per cent. per annum, but *will not* (he does not say *he cannot*) state positively; and that if renewed at all, (he had already sworn that it was,) *"it,"* that is, the usurious interest, " was added in the note."

Our conviction is, that this testimony should have been submitted to the Jury. The judgment is therefore reversed, and the cause remanded for further proceedings.