Johnson *vs.* McComb.

THOMAS JOHNSON, plaintiff in error, *vs.* ROBERT A. Mc-COMB, executor, defendant in error.

1. When, on the trial of a claim case, it appears that the defendant, *after the date of the judgment*, had conveyed the land to the claimant, and Jackson was introduced to prove that some years previous to the date of the judgment he had bought the land from defendant and paid the consideration money, but had taken no deed or other writing, and that the deed made to the claimant by defendant was made at his (the witness') request; that he had sold the land to the claimant and received the consideration, and the defendant had, at his request, made the deed to the claimant, in pursuance of the purchase and payment several years before the judgment:

*Held*, That Jackson was a competent witness, under the Evidence Act of 1866, notwithstanding the death of defendant, the maker of the deed.

2. The testimony was not illegal under the rule that express trusts must be in writing.

3. When the Judge of the Superior Court has granted a new trial, on the ground that the verdict is contrary to the evidence, this Court will not interfere to reverse his judgment, even though there be some evidence to sustain the verdict, it not appearing that the Judge has abused the discretion granted him by law in such cases.

New trial. Witness. Trust. Evidence. Before Judge ROBINSON. Baldwin Superior Court. August Adjourned Term, 1871.

Thomas Johnson had an execution in his favor, based on a judgment obtained on May 21st, 1866, against Walter H. Mitchell, Nathan Hawkins and Theodore Goodwyn, levied on a house and lot in the city of Milledgeville, as the property of said Mitchell. A claim was interposed by Robert A. Mc-Comb, as executor of Samuel McComb, deceased. Upon the trial of this issue the following evidence was introduced for the plaintiff in execution:

1st. The execution with the entry of the levy thereon.

2d. A deed made by Walter H. Mitchell, one of the defendants in execution, dated August 31st, 1866, conveying the property levied on to Samuel McComb.

3d. Obadiah Arnold, the sheriff, testified that at the time of the levy (the date of which does not appear) L. H. Briscoe was in possession of the property.

4th. John Hammond testified that Mitchell lived on the place levied on from the year 1851 to the time he left Baldwin county, in November, 1865; that James Jackson's family also lived on said place during the years 1863, 1864, and until November, 1865, when they, together with Mitchell, moved to Macon.

Plaintiff closed.

1st. James Jackson, sworn for claimant, testified that in November 1862, Mitchell, who is now dead, verbally sold to him the property levied on; that witness gave to Mitchell five negroes, among them a valuable blacksmith, then on Mitchell's plantation in Putnam county, for the house and lot and three negroes; that at the time of the trade Mitchell and witness were both living on the former's plantation in Putnam county; that Mitchell retained the negroes transferred verbally to him by witness, worked them on his plantation and paid no hire for them. That witness went into possession of the property with his family in January, 1863; moved his furniture into it, insured it, and used it as his own until it was sold to McComb; that witness sold the property to McComb, received the purchase money and directed Mitchell to make the deed to McComb; that witness thinks Mitchell would have made a deed to him at any time, on request; that Mitchell's family lived with witness until they all moved to Macon, in November, 1865; that witness married Mitchell's daughter; that he knew nothing about the indebtedness upon which the execution was based, but from the amount of interest thereon it must have been contracted before the war, and it consequently must have existed at the date of the aforesaid verbal trade; that, at the time of the trade, witness supposed Mitchell was rich—worth three times as much as he was; that no deed was made because witness was afraid of confiscation by the United States Government, as he was a member of Congress at the time of secession and withdrew therefrom, and accepted

the office of Judge Advocate in the Army of the Confederate States.

2d. P. M. Compton testified that Jackson insured the house with him for the years 1863, 1864, 1865 and 1866, and paid to him the premiums thereon; that he did not know whose money it was that he received, but Jackson paid it.

The jury found the property subject. Claimant moved for a new trial because the verdict was contrary to the law and the evidence. The motion was sustained and a new trial ordered. Whereupon, the plaintiff in exception excepted and now assigns error upon the following grounds, to-wit:

1st. Because the verdict was not contrary to any legal evidence, as the Court erred in allowing the witness, Jackson, to testify over the objection of the plaintiff, as Mitchell, the other party to the contract, was dead.

2d. Because the verdict was not contrary to any legal evidence, as, even if Jackson were a competent witness, the Court erred in admitting his testimony over the objection of plaintiff, for the reason that it was an effort to set up an express trust by parol.

3d. Because the verdict was neither contrary to the evidence nor to the law.

WILLIAM McKINLEY, for plaintiff in error.

L. H. BRISCOE; SANDFORD & FURMAN; JACKSON & CLARKE, for defendant.

McCAY, Judge.

1. We think Jackson was a competent witness. It is only by the most violent use of language that he can be said to be a party to the cause of action on trial. The issue is between the plaintiff in fi. fa. and the claimant, and the thing to be tried is, whether the property levied on is subject to the lien of the judgment. Jackson is certainly no party to this issue; nor is he a party to the record. The matter on which he is called to testify arises collaterally. He is, in effect, called on to show

that Mitchell's deed was made in pursuance of a contrac made several years before, and fully executed on Jackson's side. The estate of Mitchell has no interest, nor is it a party. True, the execution is against Mitchell, but as was not necessary, his representative is not made a party to the present proceeding. Besides, under the facts, as stated, Mitchell's estate is not interested in any way in the event of the suit. If the land is subjected, the warranty to McComb is broken, but the land will be sold to pay Mitchell's debt, so that its interest is balanced. Moreover, Jackson would be a good witness before the Evidence Act. He has no interest, apparently, in the event of the suit. True, he sold the land and got the consideration, but it appears that McComb, with a full knowledge of the facts, took and relied upon Mitchell's warranty, and we do not see how he has any right, even if he loses the land, to repudiate this written warranty and fall back on Jackson, against whom he has no warranty at all. The only ground he could rely on would be fraud of Jackson, and that is repudiated by the evidence of Jackson, and, for the purpose of determining his competency, as the case stands, that is to be taken for true. In any view of it, therefore, we think Jackson competent as a witness. So, too, we think his evidence is not illegal. He is called to show that the deed made by Mitchell was made in pursuance of a parol contract made with him (Jackson) several years before. This is a very common occurrence. Deeds are daily made in this way. Bonds for titles are taken—perhaps transferred—the money is finally paid, the deed made and the bond destroyed. To exclude such testimony is to deny the right to show what consideration moved the grantor to make the deed. This is always admissible, even to contradict the deed: 20 *Georgia*, 723 ; 24 *Ibid.*, 333 ; Code, 2690.

2. Nor is this the setting up, by parol, of an express trust. Here was no express trust. There is no pretence that Mitchell agreed to hold as trustee for Jackson. It is the ordinary case of proving the facts by parol, from which the law implies a trust. Jackson proves that he bought this land from Mitchell

and paid him for it. Nothing was said about the deed—at least, the proof shows nothing. From these facts, the law implies a trust: See Revised Code, sec. 2290, 2291. Again, this trust, so far as Mitchell is concerned, was executed by the deed to McComb, since he made the deed in accordance with his implied obligation, getting nothing from McComb.

3. The evidence against the verdict is very strong. If Jackson's testimony is true, the land is not subject. Had the plaintiff's debt been contracted after this asserted sale, a different question would arise. But if what Jackson says is so, the secrecy, etc., of this sale did not in any way hurt the plaintiff. He gave no credit to Mitchell, misled by his ignorance of this sale. Upon the facts of the sale, there is no other witness but Jackson. True, the circumstances related fail to show that this trade of the negroes for the land was known to any body but themselves and their families; and that, though Jackson went into possession, Mitchell also remained in possession. But from the relation of the parties, however this might tend to mislead a person dealing with Mitchell *afterwards*, these facts are not at all inconsistent with the purchase. True, they are facts which the jury had a right to weigh, and, therefore, it cannot be said that there is absolutely no evidence in favor of the verdict. Still, as facts authorizing Jackson to be discredited, they are of but little weight, and the Judge having granted a new trial, evidently upon the ground that the verdict was against the evidence, or that it was founded, perhaps, on some mistaken view of the effect, in law, of the want of a writing, or upon the fact of Mitchell's remaining in possession, we will not interfere with his judgment.

Judgment affirmed.