PRENDERGAST *vs.* WISEMAN, administratrix.

1. A sheriff's return upon a *fi. fa.*, repeated within each period of seven years, to the effect that he knows of no property on which to levy the *fi. fa.*, prevents the judgment from becoming dormant. And this is so whether the return be true or false, and whether the counsel for plaintiff in *fi. fa.* knows of property subject to levy or not.
2. One who. purchases property from a defendant in *fi. fa.* with knowledge of the judgment, cannot long after the death of the plaintiff, and in a claim case to which his administratrix is a party, use the defendant in *fi. fa.* as a witness to prove that there was no real debt on which the judgment was founded, but that the judgment was a collusive arrangement between the plaintiff and the defendant to cover the defendant's property with a pretended lien. If under the circumstances the purchaser can attack the judgment at all, the defendant in *fi. fa.* is not a competent witness in his behalf for that purpose.

March 5, 1888.

Executions. Judgments. Before Judge JOHN T. CLARKE. Terrell superior court. May term, 1887.

Reported in the decision.

D. H. POPE by J. H. LUMPKIN, and L. C. HOYL, for plaintiff in error.

SIMMONS & GUERRY, *contra.*

BLECKLEY, Chief Justice.

A *fi. fa.* issued in 1870, in favor of Wiseman against Woolbright, upon a judgment previously rendered for up-

wards of $300, besides interest.   Successive returns within each seven years thereafter were made by the sheriff, to this effect:  "I know of no property on  which to levy this *fi. fa.*"   In November, 1884, a levy was made upon a tract of land as the property of Woolbright, the defendant, and a claim was interposed by Prendergast.

1. Two questions were made at the trial; first, that the judgment was dormant.   The sufficiency of an entry substantially similar to the entries made on this *fi. fa.* to prevent dormancy, was settled in *Ellis vs. Atlantic and Gulf Railroad*, 61 *Ga.* 362.   It is contended, however, that the evidence shows that one of the entries was not a true return, because made while the defendant in *fi. fa.* was in possession of this tract of land, and after it became known to counsel for the creditor that the land was the property of the debtor.   The reply is, that under section 2914 of the code, the fact of an entry by the proper officer, and not the truth of it, is the material matter with respect to keeping the *fi. fa.* from becoming dormant.   If the officer make a false return and thereby any person be injured, the redress for the injury is against the officer; and whether it be sought or not, the effect of the return in keeping the *fi. fa.* alive is the same.   There is no intimation anywhere in our statutes that a return properly made must be true in order to be effective in preventing dormancy.

2. The evidence showed that the defendant in *fi. fa.* was in possession of the land levied upon, from 1870 up to about the time he conveyed to the. claimant, which was in October, 1883.   The claimant exhibited a deed from him, reciting payment of $700 as a consideration.   He (the claimant) testified in his own behalf that he paid that sum to Woolbright for the land, and that before purchasing, he investigated the title fully, went to the clerk's office and saw the execution docket containing an entry of this *fi. fa.* and became satisfied that it was not an  existing lien. Having thus testified, he proposed to prove by Woolbright,

the defendant in *fi. fa.*, that this was a fraudulent debt, without any consideration whatever, and held by Wiseman, who was his nephew, for the purpose of protecting his (the uncle's) property. This was objected to upon the ground that Wiseman, the plaintiff in *fi. fa.* was dead, and that the judgment is conclusive of the debt. It appeared that Wiseman had been dead some nine or ten years. The objection was sustained by the court and the evidence excluded. The precise question for our determination is, whether a claimant who has purchased property subject to the lien of a judgment, with notice of the judgment, can show for his protection, by the defendant in *fi. fa.* as a witness, that the judgment was founded upon no debt, but only upon a fraudulent contrivance between the plaintiff and the defendant, designed to protect the defendant's property; and this, too, after the lapse of more than a dozen years after the rendition of the judgment, and some nine or ten years after the death of the plaintiff in *fi. fa.*

Prior to the act of 1866, (code, §3854,) the defendant in *fi. fa.* was not a competent witness for the claimant. *Williams vs. Kelsey & Halsted*, 6 *Ga.* 365. Doubtless for some purposes, the act rendered him competent, but it is a serious question whether in any case his competency would extend to an attack made upon the judgment, the judgment creditor being dead, the exception to competency in the act being as follows: " Where one of the original parties to the contract or cause of action in issue or on trial is dead, . . . or where an executor or administrator is a party in any suit on the contract of his testator or intestate, the other party shall not be admitted to testify in his own favor." Here Wiseman's administratrix is a party to this claim case. But we do not purpose to decide the abstract question of competency under the statute. On that question we were cited to *Anderson vs. Wilson*, 45 *Ga.* 25 ; *Wood vs. Crawford*, 75 *Ga.* 733 ; *Johnson vs. McComb*, 49 *Ga.* 120 ; *Powell vs. Watts*, 72 *Ga.* 770 (2a, 3); *Woodruff vs. Wilkinson & Hatcher*, 73 *Ga.* 115. None of

these cases are precisely in point, and they would be help-ful only by their analogies and general doctrines.

The code, §3596 declares that "creditors or *bona fide* purchasers may attack a judgment . . . for fraud or collusion whenever and wherever it interferes with their rights either at law or in equity." Instances of attack by creditors appear in *Smith vs. Gettinger*, 3 *Ga.* 140; *Hammock vs. McBride*, 6 *Ga.* 178; *Williams vs. Martin*, 7 *Ga.* 377. And there is no doubt that a purchaser who takes without notice of the judgment can attack as freely as a creditor. But he who purchases property which he knows to be subject to the lien of a judgment in the hands of his vendor, acquires the property as a privy in estate with his vendor, and it would be no hardship to hold him as much bound by the judgment as he would be were he a direct party to it. The general rule with reference to *bona fide* purchasers is, that a want of notice is essential to their claim for protection. 1 Daniel's Chancery Practice, 612, 613, 614; 1 Story Equity, §§397, 407; Spicer *vs.* Waters, 65 Barbour, 231. It is clear beyond all question that Woolbright, the judgment debtor, could not protect this land in his own hands by showing the judgment fraudulent, either by his own testimony or that of any other person, he having participated in the fraud if any was committed or contemplated. Then why should this claimant, his privy in estate, who acquired his title with notice of the judgment, be permitted to make an attack upon the judgment which Woolbright could not make? Why should he volunteer to purchase land of Woolbright which was subject to pay the judgment, whether it represented a real debt or not, and thereby aid Woolbright to do indirectly what he could not do directly, namely, withdraw this property from the lien of the judgment, and take the proceeds of it for his own use? We need not hold, however, that he may not attack the judgment at all, but we can and do hold that he cannot do it by the testimony of Woolbright,

Wiseman the creditor being dead. Our precise decision on the point is carefully stated in the second head-note.

Judgment affirmed.