Weldon, J.,
delivered the opinion of the court:
This is a proceeding to recover, under the provisions of the Act of Mar eh 2,1891, chapter 496 (26 Stat. L., 822), compensation for certain lands sold in the State of South Carolina under said act, and involves the question as to who is entitled to recover, the mortgageor or mortgagee.
Prior to the war Benjamin B. Bythewood, then the owner of the property in question, mortgaged it to Mrs. Catharine B. Yerdier to secure a loan of $5,000. Mrs. Yerdier died intes- ' tate, and all her property descended to her sister, Elvira Glover, who died intestate in July, 1865, leaving as her distributees her daughter Catharine J. Stewart, her son James S. Glover, and the widow and children of a predeceased son. In January, *245 1866, tbe administrator of Mrs. Verdier assigned tbe bond to secure wbicb tbe above-mentioned mortgage was given to H. W. Stewart, stated to be one of tbe beirs of C. B. Verdier, There are now filed in tbis court three petitions for a recovery-under the direct tax act of 1891, one on behalf of tbe mort-gageor, By tbe wood, one on behalf of tbe beirs of Mrs. Verdier, and one on account of tbe assignee of tbe bond. These cases have been tried together, and tbis opinion decides them all.
The rights of tbe litigants turn upon tbe construction of tbe statute as to tbe character of ownership wbicb entitles a party to tbe benefits of tbe law. Tbe provision of tbe statute is as follows:
“ Sec. 4. That it shall be the duty of tbe Secretary of tbe Treasury to pay to such persons as shall in each case apply therefor, and furnish satisfactory evidence that such applicant was at tbe time of tbe sale hereinafter mentioned tbe legal owner, or is tbe heir at law, or devisee of tbe legal owner, of such lands as were sold. * # *
“ To tbe owners of tbe lots in tbe town of Beaufort one-half of tbe value assessed thereon for taxation. * * *
“To tbe owners of lands wbicb were rated for taxation * * * five dollars to tbe owner of all other land one dollar per acre: Provided, That in all cases where such owners, or persons claiming under them, have redeemed or purchased said land, * * * they shall not receive compensation for such parts so redeemed or purchased; and any sum or . sums held * * * in trust for any such owner under section 3 of this act shall be deducted from tbe sum due such owner under tbe provisions of tbis section.”
■ Tbe person receiving tbe same is to “ execute a release of all claims and demands of every kind and description whatever against tbe United States arising out of tbe execution of said acts, and also a release of all right, title, and interest in and to tbe said lands.”
Tbe issue is to be settled by a construction of tbe word “legal owner” as found in tbe first part of section 4. It is true that tbe word owner occurs in other parts of tbe section without the qualifying word legal, but not by way of definition. Tbe word owner, as used in tbe subsequent clauses of tbe statute, is to define tbe quantity of value wbicb is to be paid and not tbe quality of tbe taker. Tbe phrase “such owner,” as used in tbe provisos of said section, must refer to tbe classification of persons to whom tbe grant is made in tbe *246 first part of the section. The grant as to the quality of the taker is not to be controlled by the phraseology of the act providing simply as to the quantity. One describes persons and the other, by way of measurement, refers to persons simply to designate the quantity to which the party is entitled.
This is a controversy, as has been said, between the mort-gageor and the mortgagee, as to who is entitled to recover under the statute. It is insisted upon the part of the heirs of Bythe-wood that, as the legal estate was in their ancestor at the time of sale, they are the parties entitled to recover. Upon the other hand, it is insisted upon the part of the heirs of Verdier that they are the heirs of the owners of the beneficial or equitable estate, and are therefore entitled to recover; that the statute gives the money to the person who in equity is entitled to it, as contradistinguished from a party who claims in and through a mere legal title. In this connection it becomes necessary for us to inquire and determine, what was the interest of a mortgagee in land in the State of South Carolina at the time of sale and when the law of 1891 was enacted.
At common law by the terms and operation of a mortgage the legal title passed to the mortgagee. In Walker’s Introduction to American Law it is said:
“They are pledges to secure the payment of money; and in the present wide extension of credit they form one of the most frequent subjects of judicial cognizance. The law which governs them is the common law, modified by a very few statutory provisions. Of the derivation of the word mortgage, Blackstone gives, in substance, this account: Vivwn vadium, or living pledge, is when a debtor pledges land to his creditor, to hold until the debt is paid out of the rents and profits: this is likewise called a Welsh mortgage. Mortuum vadium, dead pledge, or mortgage, is where a debtor actually conveys land to his creditor upon condition that the conveyance shall be void if the debt be paid at a given time; but otherwise shall be absolute. In the former case, which now rarely if ever occurs, the debtor still retains a subsisting title to the land, though encumbered by the debt to be paid from the rents and profits. In the latter case, which is that of the common mortgage, the debtor, by the terms of the conveyance, retains no subsisting title; and therefore the pledge is said to be dead, though in fact, as we shall see, the law still gives him a subsisting interest not warranted by the-terms of the conveyance.” (Walker, American Law, p. 33.)
*247 Not only have courts of equity cliangecl the legal character of a mortgage, but the legislatures of many of the States have passed laws materially modifying the estate of the parties to a mortgage. We have taken occasion to look into the legislation of the different States of the Union, and find that in more than one-half of them the rule of the common law is changed, and the mortgagee is not the owner of the legal estate, but the possessor of an equitable estate or lien, which he can make available through the medium of a court of chancery. The law of the State of South Carolina is to be applied in determining the rights of the parties in the land at the time of sale, and the consequent right of recovery in this proceeding. “ The law of real property is the law rei siti, and the Federal courts, in matters of realty, follow the decision of the courts of the several States.” (Rodgers v. United States, 21 C. Cls. R., 133.)
That being the law, it becomes important for us to ascertain the law of real property in the State of South Carolina. As early as the year 1701 the legislature of that State passed a statute, which continued until 1S79, as follows:
“No mortgagee shall be entitled to maintain any possessory action for real estate mortgaged even after the time allowed for the payment of the money secured by the mortgage has elapsed, but the mortgageor shall be deemed the owner of the land and the mortgagee as owner of the money lent, or due, and shall be entitled to recover satisfaction for the same out of the land by foreclosure and sale according to law: Provided, That, notwithstanding the foregoing provisions, all releases of the equity of redemption shall be binding and effectual in law, and said provisions shall not apply when the mortgageor shall be out of possession.”
The statute has been the subject of judicial construction for many years, and in the case of Hardin v. Hardin (34 So. Ca.) it is said:
u It is well settled in this State that by the act of 1791, as it has been construed in many decisions, which are so well known to the profession as to render it unnecessary to cite them, the relation of mortgageor and mortgagee is totally different from that which existed at common law. ' By our law a mortgage of real estate is not a conveyance of any estate whatever, but is simply a contract, whereby the mortgagee obtains a lien on the property mortgaged, as a security for the payment of the debt; the mortgageor still remains, even after the condition is broken, *248 tbe owner of tbe mortgaged premises, and retains all tbe rights incident to snch ownership, among which is the right to receive the rents and profits, while the mortgagee simply holds a lien npon the property to secure the payment upon his mortgage, which he may enforce in any of the methods recognized by law, but having no title to the ownership of the mortgaged premises, he can not claim any of the rights incident to such relation; his rights are limited by the terms of the contract as found in the mortgage, and by that contract he simply has a lien upon the mortgaged premises, and that he may enforce in any proper way.”
In order to relieve the mortgagor against the consequence of the estate becoming absolute, the courts of equity at a very early day decided that the mortgagor might redeem the estate upon the payment of the debt and interest, provided this were done within the period allowed for bringing an action of ejectment, and this is the origin of the right of the equity of redemption. But inasmuch as this condition of the law kept the estate in doubt for many years, the courts of equity interfered in the interest of the mortgagee, and originated the equitable proceeding of foreclosure, the effect of which was to settle the estate of the moxtgageeupon such terms as were equitable and just. The State of South Carolina seems to be one of the States which.at a very early day changed the common law by a statute, in which it is provided “that the mortgagor shall be deemed the owner of the land, and the mortgagee of the money lent or due, and shall be entitled to recover satisfaction for the same out of the land by foreclosure according to law.” By the provisions of this statute the mortgagor is the owner of the land and the mortgagee of the money. It is very difficult to determine what estate, if any, is inherent in the mortgagee under the terms of the statute. The right to satisfaction by foreclosure is the recognition of a lien on the land, as an incident of the debt, not amounting to the dignity of an estate. Strictly and philosophically speaking, the lowest form of a right in land must be an estate, which is defined to be “ The degree, quantity, nature, and extent of an interest which a. person has in real property.” (Bouvier’s Law Dictionary, Estate, p. 605.)
Under the statute the Supreme Court of South Carolina has decided: “By our law a mortgage of real estate is not a conveyance of any estate whatever, but is simply a contract, *249 whereby the mortgagee obtains a lien on the property mortgaged as a security for” payment of a debt.” Assuming this decision as the correct expression of the law in the construction of the statute, no interest in the land which can be denominated ownership passed to the mortgagee. It evidently was the purpose of the legislature, as construed by the Supreme Court, to abolish and destroy whatever interest, either of a legal or equitable character, the mortgagee may have had at common law in the mortgaged premises, and reduce his rights to a mere chose in action, in the form of a lien, to be enjoyed and pursued not as an interest in land, but as a mere incident of the debt.
The statute providing, as it does, in relation to the rights of the parties, if the mortgagee has any interest in the land it must be the lowest possible form of an estate. Can he be said to be in any view of the law a legal or equitable owner? The two great divisions of estates in lands, as defining the quality, are legal and equitable, the one, representing the ownership, being seized of the property, the other representing a use or beneficial interest. When courts and legislatures speak of the different estates, it is well understood what is meant, and in construing statutes we are not at liberty to include the one and exclude the other by mere construction. The legislative intent enacted within the terms and spirit of the constitution is the highest and most authoritative form of legal expression) and courts must follow that intent whithersoever it leads, irrespective of consequence and results.
The Supreme Court, on the subject of construction, quotes with approbation the following from one of the distinguished authors on the law:
“But Vattel’s first general maxim of interpretation is that <it is not allowable to interpret what has no need of interpretation,’ and he continues: ‘When a deed is worded in clear and precise terms — when its meaning is-evident and leads t'o no absurd conclusions — there can be no reason for refusing to admit the meaning which such deed naturally presents. To go elsewhere in search of conjectures, in order to restrictor' extend it, is but to elude it.’ (Vattel’s Law of Nations, 244.) Here the words are plain and interpret themselves. (Ruggles v. Illinois, 108 U. S., 534.)
“But all these rules are understood to be subject to the qualification that, where the language is free from ambiguity, leads to no absurdity, and hence needs no interpretation, *250 nothing beyond it can be regarded. (Endlich, Interpretation of Statutes, sec. 27. Ezekiel v. Dixon, 3 Ga., 140.)”
The term legal owner is a classification of ownership well known to the law, and excludes estates and interests of a mere equitable character, or liens incident to property because of a debt.
Assuming the decision of the Supreme Court of the State of South Carolina in the construction of the statute upon the subject of the rights of mortgagor and mortagee as the law defining the interest of the parties in the land at the time of sale, the conclusion is inevitable that the mortgagor was the “legal owner” at the time of the sale, and being such, his rights are superior under the act of Congress to the right of the mortgagee. The land at the time of sale was worth much more ■ than the amount of mortgage, and by the sale the mortgagor lost largely in excess of the mortgagee. The judgment of the court is that the petition be dismissed.